Mr. Justice Scott delivered the opinion of the Court. This proceeding is founded upon a suggestion that the defendant was an alien at the time of his election to the office of sheriff, and the only question is as to the truth of the suggestion. The defendant relies upon the naturalization of his father during his own minority, both being then, as they had been for a number of years before and ever since, residents of the United States. On the part of the State, it is insisted that the alleged naturalization of the father was irregular and void, and that, even it it were valid, it did not enure to the benefit of the defendant. The objections pointed out touching the first of these two positions of the State, seem to be predicated upon provisions of the act of Congress of 1816, that had been repealed previously to the admission of the father. And when the proceedings of the Court of Common Pleas of New York, as shown by the transcript, are tested by the laws then actually in force, no substantial defect appears, at least none that go the extent of invalidating the admission; and such as appear are beyond our teach. The authorities cited amply sustaining the position that until reversed, the judgment rendered, as shown by the transcript, is conclusive of its own validity, and closes the door behind it to all inquiry. It was such a Court as was expressly within the act of Congress. Nor was it without jurisdiction because a State Court, and because Congress had exercised their exclusive powers over the subject of naturalization and established a uniíorm rule, as provided by the federal constitution; and thereby the Federal Court had exclusive jurisdiction, as is urged for the State. On the contrary, a very different doctrine seems well established, (1 Kent's Com. 395 to 404,) and that is, that, unless Congress expressly provide to the contrary, the State courts will retain concurrent jurisdiction in all cases where they had jurisdiction over the subject matter before the adoption of the constitution, if compatible with their State obligations. But whether the State courts are bound to exercise such concurrent jurisdiction, so permitted to be retained, even when enjoined upon them by act of Congress, is not altogether so well settled. Some strong intimations in the negative have been given by the Judges of the Supreme Court of the United States] and, in §ome instances, the courts of particular States have refused to exercise this jurisdiction. And even in cases where they have done so, a clear distinction has been taken between that class of cases over which they had exercised original jurisdiction before the adoption of the constitution, and that class created under the federal constitution, as pecuniary penalties for violating an act of Congress, and all crimes and offences against the sovereignty of the United States] all such being new matters of legal cognizance, not before within the jurisdiction of the State courts; and besides this are excluded from the State courts (as well as some other matters oí national concern) by the Federal Judiciary Act. And in all cases where the State courts exercise this concurrent jurisdiction, it is upon condition that the appellant jurisdiction of the Federal Court shall apply; whereby the judicial power of the United States is made to extend to all cases of which the State courts, (not being prohibited by any act of Congress,) in the exercise of their ordinary, original, and rightful jurisdiction, so incidentally take cognizance. And naturalization cases ave of this latter class, the several States having had their own naturalization regulations enforceable by their own courts before the adoption of the federal constitution: and the naturalization laws of Congress, so far from prohibiting to them the exercise of a concurrent jurisdiction in such cases, have in express terms invested them with such. There can be no ground of doubt, then, as to the rightiul jurisdiction of the State courts in such cases until extinguished by some act of Congress; and such seems to have been the universal understanding upon this point. In this case, then, the naturalization of the father being taken as established, the only remaining question is, whether or not his naturalization, under the state of facts admitted by the demurrer, by legal operation, made the defendant a citizen. Besides the authorities cited to this point by the learned counsel for the defendant, which, although strongly persuasive, fall somewhat short of the full length, the case of West vs. West, (8 Paige Ch. R. 433,) comes fully up, being an express adjudication of the chancellor of the State of New York, that, under the naturalization act of Congress of 1802, the infant children of aliens, though born out of the United States, if dwelling within the United States at the time of the naturalization of their parents, became citizens by such naturalization. And that the provision of the act on this subject is prospective, so as to embrace the children of aliens naturalized after the passage of the act, as well as the children of those who were naturalized before. This conclusion of the chancellor, arrived at after a careful and thorough examination of the various provisions of the several acts of Congress passed prior and subsequent to that of 1802, is sustained by reasoning so satisfactory that we have no hesitancy in adopting it as the true exposition of the law. These conclusions render it altogether unnecessary for us to examine the other questions discussed by counsel as alternative propositions. And being of opinion that the facts set forth in the defendant’s response show a sufficient and legal warrant for the exercise of the office and franchise of sheriff of Sevier county, the demurrer must be overruled. The plaintiff then filed a replication, denying that Robert Penney was the father of the defendant, as set forth in the response; but afterwards filed her written admission of the truth of the response as to this fact, and the cause was submitted without argument for final judgment. Mr. Chief Justice Johnson delivered the opinion of the Court. The fact of the paternity of Robert Penney having been admitted by the Attorney General, the law is clearly in favor of the respondent. It is, therefore, ordered and adjudged that the said James Penney be discharged, and go hence without day, and recover his costs.